**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Paula A. Cupp, *et al.*,

       Plaintiffs,

    v.                          Case No.  1:03cv116

Fluor Fernald, Inc.,                   Judge Michael H. Watson

       Defendant.

## OPINION AND ORDER

Before the Court are the following:

1.      The June 16, 2005 Motion of Defendant Fluor Fernald, Inc. (hereinafter "Defendant") for Summary Judgment as to the Claims of Paula A. Cupp (Doc. 36).  Plaintiff Paula A. Cupp (hereinafter "Ms. Cupp") filed a Memorandum in Opposition on August 19, 2005 (Doc. 46).  Defendant filed a Reply Memorandum on September 26, 2005 (Doc. 56).

2.      The June 16, 2005 Motion of Defendant for Summary Judgment as to the Claims of Terry R. Feiler (Doc. 37).  Plaintiff Terry R. Feiler (hereinafter "Ms. Feiler") filed a Memorandum in Opposition on August 19, 2005 (Doc. 48).  Defendant filed a Reply Memorandum on September 26, 2005 (Doc. 58).

3.      The June 16, 2005 Motion of Defendant for Summary Judgment as to the Claims of Kathleen C. Gessendorf (Doc. 38).  Plaintiff Kathleen C. Gessendorf (hereinafter "Ms. Gessendorf") filed a Memorandum in

Opposition on August 19, 2005 (Doc. 50). Defendant filed a Reply Memorandum on September 26, 2005 (Doc. 60).

4.  The June 16, 2005 Motion of Defendant for Summary Judgment as to the Claims of Peggy J. Ravenscraft (Doc. 39). Plaintiff Peggy J. Ravenscraft (hereinafter "Ms. Ravenscraft")[1] filed a Memorandum in Opposition on August 19, 2005 (Doc. 47). Defendant filed a Reply Memorandum on September 26, 2005 (Doc. 57).

5.  The June 16, 2005 Motion of Defendant for Summary Judgment as to the Claims of Elizabeth A. Sprague (Doc. 40). Plaintiff Elizabeth A. Sprague (hereinafter "Ms. Sprague") filed a Memorandum in Opposition on August 19, 2005 (Doc. 49). Defendant filed a Reply Memorandum on September 26, 2005 (Doc. 59).

6.  The December 16, 2005 Motion of Defendant to Strike the Jury Demand of Plaintiffs (Doc. 61). Plaintiffs filed a Memorandum in Opposition on January 18, 2006 (Doc. 68). Defendants filed a Reply Memorandum on January 24, 2006 (Doc. 70).

These matter are now ripe for review. For the reasons stated herein, Defendant's Motions for Summary Judgment are hereby **GRANTED.**

## I.    FACTS

Fernald, Ohio is the site for a former uranium metal processing facility. From the 1950's to the 1980's, contractors at the facility manufactured high-grade uranium

---

[1] The Court shall refer collectively to Ms. Cupp, Ms. Feiler, Ms. Gessendorf, Ms. Ravenscraft, and Ms. Sprague as "Plaintiffs".

products for the United States for use in the nuclear weapons complex (Gill Aff. ¶2).  In 1991, the Department of Energy (hereinafter "DOE") changed the facility's mission to environmental cleanup and site closure (*Id*. ¶3).  As a result, DOE and Defendant realized the number of employees needed would decrease as clean-up activities progressed  (*Id*. ¶5).  Employees were notified and advised to plan for the time when the facility closed (*Id.*).  Moreover, Defendant established a career development center for employees to prepare for career changes after the facility closed (*Id*. ¶6).

On December 1, 2000, DOE and Defendant executed a new contract which provided for closure of the facility by a target date.  Defendant completed a plan for closure in 2009 (hereinafter "2009 Baseline") and submitted it to DOE for approval (Hagen Depo., pp. 29, 34).  The 2009 Baseline described the work to be done, the order in which it was to be completed and the number of employees with the necessary skills to perform the work within the schedule for closure (*Id*., pp. 21-23).

The 2009 Baseline utilized a Manpower Planning System (hereinafter "MPS") which identified between 80 to 90 different sets of skills, or Manpower Planning Classifications (hereinafter "MPC"), for salaried employees (Gill Aff. ¶7).  As Defendant's personnel system used approximately 450 narrower job titles, in early 2001, Defendant worked to appropriately place employees in the correct job title for the work they were performing and that each job title was included in the appropriate MPC (*Id*. ¶¶7-8).  Generally, MPCs include several job titles and may include employees from various organizations in the facility (*Id*. ¶9).  Defendant notified salaried employees of their MPC by October, 2001 (*Id.* ¶10).

Defendant compared the number of employees in an MPC to the 2009 Baseline number in that MPC throughout the planned closure process (*Id.*). These comparisons resulted in the conclusion reductions in the salaried workforce were needed from 2002 until the 2009 planned closure (*Id.*).

In late Spring, 2001, Defendant retained William M. Mercer, a human resources consulting firm (hereinafter "Mercer"), to assist in the design and implementation of plans to reduce the work force (*Id.* ¶13). The process developed by Mercer, and approved by Defendant, identified employees with the skills to perform the work needed in the future to complete site closure (*Id.* ¶14). Mercer trained Defendant's managers to perform each step in the process (*Id.*). Further, the process involved a series of reviews, checks and balances (*Id.*).

The first step of the Mercer process was the Voluntary Separation Program (hereinafter "VSP"), which provided employees in an overstaffed MPC monetary incentives to leave employment (*Id.* ¶15). If the VSP did not result in sufficient reductions in a MPC, the Involuntary Separation Program (hereinafter "ISP") followed (*Id.*).

The ISP process developed by Mercer is as follows. The first step required the formation of a Functional Job Review Team (hereinafter "FJRT") for each declining MPC (Heinen Depo., p. 22). The FJRT first determined whether all job titles included within a MPC were to be ranked together against the same criteria, or whether various job titles were to be ranked separately (*Id.*, Exh. 1). The next step required the FJRT to identify the skills and other criteria against which the employees in the MPC were rated and assign relative weights for each criteria (*Id.,* pp. 17-18, Exh 1).

The next step required the Department Managers of employees in the MPC to complete an Individual Employee Rating Form (*Id.,* p. 18; Mohr. Depo., Exh. 2).  An employee's core skills were rated, as well as the specific skills required for the MPC based on observation, feedback of others and performance appraisals (Mohr. Depo., Exh. 2).  The ratings were to focus on skills needed for future work on the site (Gill Aff. ¶23).  Managers prepared a written rationale when a rating was other than average (Gill Aff. ¶24).  Individual ratings were subject to review and approval by the rater's manager. (*Id.*).

The Human Resources Department audited individual employee rating forms to identify ratings anomalies, including rater inconsistencies (*Id.*).  Additionally, an overall rating for each employee, based on individual ratings and FJRT weightings of skills, were calculated (*Id.*).  Employees were then ranked according to their overall rating score, highest to lowest, on a Functional Ranking Report (hereinafter "FR Report") for each MPC or MPC sub-category (*Id.* ¶25).

The FR Reports and individual employee rating forms were reviewed by the FJRT (*Id.* ¶27).  The FJRT utilized the FR Reports to recommend which employees to retain and terminate (*Id.*).   Generally, the recommendations were based on numerical rankings in the FR Report, with relatively lower rated employees being selected for separtion (*Id.* ¶28).  If a recommendation was made other than on rank, the FJRT provided a written rationale (*Id.*).

The final step of the process required the Senior Management Team, comprised of the Defendant's President and a small number of other top-level managers, to

evaluate the FJRT recommendations for each MPC for either approval or disapproval (*Id.* ¶29).

A.    *April, 2002 Reduction in Force*

Defedant initiated a VSP in October, 2001.  However, sufficient reductions did not result (Gill Aff. ¶17).  As such, the Mercer process for an ISP began in early 2002 (*Id..* ¶17).  The employees selected for the ISP were notified on April 4, 2002.

1.    Ms. Cupp

Ms. Cupp began working at the facility in 1986 and for Defendant when it came on site in 1992 to begin clean-up work (Cupp Depo., pp. 16, 18, 20).  While her title changed during her tenure, Ms. Cupp performed the duties of a cost analyst for the last 14 years of her employment (*Id.,* p. 29).  She was never promoted from the lowest cost analyst position (*Id.*, pp. 17-18, 27-29, Exh. 2).  Her duties included processing paperwork involved in monitoring the costs and budget of a project (*Id.*, p. 22).  Ms. Cupp was advised her job title was Cost Analyst I in the Cost Analyst MPC (*Id.*, pp. 50-51).  Cost Analyst I required the lowest level of skills and responsibilities (*Id.*, pp. 30-31).


In October, 2001, Ms. Cupp received notification that a number of employees in the Cost Analyst MPC would be reduced (*Id.*, Exh. 12).  Defendant offered a VSP to Ms. Cupp, but she chose not to participate (*Id.*, p. 53).

The Cost Analyst MPC, comprised of 28 employees, included four job titles: Cost Analyst I, II, and III, and Senior Cost Analyst (Gill Aff. ¶51).  The FJRT separated the Cost Analyst MPC into two sub-groups, Cost Analyst X and Cost Analyst Y (Hagen Depo., pp. 93-95).  The 12 employees in Cost Analyst I and II job titles constituted Cost

Analyst X (*Id.*).  Cost Analyst Y consisted of all 16 employees in Cost Analyst III and

Senior Cost Analyst job titles (*Id.*, pp. 93-95).  Defendant[2] rated and ranked Ms. Cupp's

skills with the other employees in Cost Analyst X.

Two employees in Cost Analyst X were chosen for the ISP, Ms. Cupp and Laura

Pickup, each rating a 2.35 out of 5.00 (Reed Depo., p. 45, Exh. 1).  Their ratings were

the lowest in Cost Analyst X and were selected on this basis (Reed Depo., Exh. 1;

Hagen Depo., p. 67).   She was 54-years old (*Id.,* p. 9).[3]  She was four months from

retirement benefit eligibility.

On February 18, 2003, Ms. Cupp filed the instant action asserting claims of age

discrimination in violation of the Age Discrimination in Employment Act ((hereinafter

"ADEA") and O.R.C. Chapter 4112, sex discrimination in violation of Title VII and O.R.C.

Chapter 4112, wrongful discharge in violation of Ohio public policy and Employee

Retirement Income Security Act (hereinafter "ERISA") discrimination in violation of 29

U.S.C. §1140 (Doc. 1).

2.    Ms. Feiler

Ms. Feiler began working at the facility in 1991 and for Defendant in 1992 when it

came on site to begin clean-up work (Feiler Depo., pp. 20-23, Exh. 1).  During the

course of her employment, Ms. Feiler worked as a secretary and in other administrative

positions (*Id*., pp. 21, 25-26).  At the relevant time, her job title was Project Program

---

[2]The Court's use of "Defendant" in certain instances during this Opinion is a generalization utilized for ease of reading.

[3]The Court notes that for certain Plaintiffs, their age is expressed in terms of "nearly".  However, the relevant age is the actual age at termination, not what age the Plaintiff was to attain of their next birthday.

Services Specialist I, a payroll position, in the Maintenance/Infrastructure Division (*Id.*, pp. 44-45, 63, Exh. 10-11; Gill Aff. ¶59).  Her job title was included in the Department Administrator MPC (hereinafter "Dept. Admin. MPC") (Feiler Depo., pp. 54-55, Exh. 11).

In October, 2001, Defendant notified Ms. Feiler that a number of employees in the Dept. Admin. MPC would be reduced (*Id.*, p. 59, Exh. 13-14).  While a VSP was offered, Ms. Feiler opted not to participate in the VSP (Id., p. 63).

The FJRT identified three sub-groups within the Depart Admin MPC employees: Program, Project Functional and Administrative (Nichols Depo., pp. 140-142). Defendant selected all the Program sub-group employees for termination as the 2009 Baseline provided for elimination of their assigned programs in the near future (*Id.,* p. 145; Kopp Depo., pp. 122-125).   Additionally, Defendant selected two Project Functional employees for termination (Nichols Depo., p. 146; Gill Aff. ¶63).

17 employees, including Ms. Feiler, composed the Administrative sub-group (Nichols Depo., pp. 141, 148).  Selected for termination were two part-time employees, as full-time employees could absorb their duties (Nichols Depo., pp. 144-145, Exh. 20). Moreover, the four lowest ranking employees, which included Mr. Feiler, were chosen for ISP due to their ratings of 2.15 to 3.30 out of 5.00 (Nichols Depo., Exh. 20; Gill Depo., Exh, 2; Kopp Depo., p. 119).  Ms. Feiler's rating was 3.00 (Nichols Depo., Exh. 20).  She was 54-years old and less than 12 months from retirement benefit eligibility.

On February 18, 2003, Ms. Feiler filed the instant action asserting claims of age discrimination in violation of the ADEA and O.R.C. Chapter 4112, sex discrimination in violation of Title VII and O.R.C. Chapter 4112, wrongful discharge in violation of Ohio public policy and ERISA discrimination in violation of 29 U.S.C. §1140 (Doc. 1).

*B.     August 2002 ISP*

Defendant undertook a second VSP in August, 2002 (Gill Aff. ¶19).  Again sufficient reductions were not attained.  Therefore, an ISP was instituted.  The employees selected for the ISP were notified on August 22, 2002.

1.     Ms. Gessendorf

Ms. Gessendorf began working at the facility in 1980 and for Defendant in 1992 when it came on site to begin clean-up work (Gessendorf Depo., p. 25).     During her employment she held administrative positions and her final job title was Project/Program Services Specialist II (Gessendorf Depo., Exh. 1, 9; Gill Aff. ¶78).  Her job title was included in the Dept. Admin. MPC (Gessendorf Depo., p. 51, Exh. 9).

In April, 2002, Defendant notified Ms. Gessendorf that a number of employees in the Dept. Admin. MPC would be reduced (*Id*., p. 51).  While a VSP was offered, Ms. Gessendorf did not participate in the VSP (Gill Aff. ¶79).

As stated above with respect to Ms. Feiler, employees in the Dept. Admin. MPC were selected for the April 2002 ISP.  However, Ms. Gessendorf was not selected for termination at this time (Gill Depo., Exh. 2).

 Ms. Gessendorf declined the August 2002 VSP offer (Gessendorf Depo., p. 57, Exh. 13).  Defendant informed  Ms. Gessendorf she was in the Project Services Representative (hereinafter "PSR") MPC for the August 2002 ISP and was at risk for termination (Gessendorf Depo., p. 59, Exh. 15).  She received a rating of 3.25 out of 5.00 (Kopp Depo., pp. 126-127, Exh. 6).

Ms. Gessendorf and Brad Conley were selected for termination (Gill depo., p. 51, Exh. 3).  Among the ten employees in the PSR MPC, Ms. Gessendorf and Mr. Conley

received the second and fourth lowest ratings, respectively (Kopp Depo., Exh. 6).

Defendant's stated reason for retaining Thomas Voelkerding and Daniel Day, the lowest

and third lowest rated employees, was because each had necessary on site expertise in

space management (Kopp Depo., p. 129-130, Exh. 6). Ms. Gessendorf did not have

space management expertise (Gessendorf Depo., p. 38). Ms. Gessendorf was 56-

years old.

On February 18, 2003, Ms. Gessendorf filed the instant action asserting claims of

age discrimination in violation of the ADEA and O.R.C. Chapter 4112, sex discrimination

in violation of Title VII and O.R.C. Chapter 4112, and wrongful discharge in violation of

Ohio public policy (Doc. 1).

2.      Ms. Ravenscraft

Ms. Ravenscraft began working at the facility in 1983 and for Defendant when it

came on site in 1992 to begin clean-up work (Ravenscraft Depo., p. 32, Exh. 1). During

her employment she was an hourly craft services laborer, shift supervisor and ultimately

a supervisor of the site laundry (*Id.,* pp. 32-33, Exh. 12). Her job title was Supervisor

Site Project Support Services which was in the Project Support Manager MPC (*Id.,* pp.

32-33, 113, Exh. 12).

The April 2002, VSP was initiated for employees in Ms. Ravenscraft's MPC (Gill

Aff. ¶48, 49, Exh. 1-2). Ms. Ravernscraft opted not to participate (Ravenscraft Depo., p.

116). She was not selected for the April 2002 ISP (Gill Depo., p. 51, Exh. 2).

Ms. Ravenscraft also declined the August 2002 VSP (Ravenscraft Depo., p.

133). For the August, 2002 ISP, the  Project Support Manager MPC was renamed to

the Operations Manager (hereinafter "OM") MPC (Gill Aff. ¶125).   The FJRT divided the

OM MPC into three sub-groups: Maintenance and Infrastructure (hereinafter "MI"),

Waste Generator Services and Other (*Id.* ¶126). Ms. Ravenscraft was one of 14

employees in the MI sub-group (Kopp Depo., Exh. 7).

Ms. Ravenscraft ranked twelfth in the group, receiving a rating of 3.10 out of 5.00

(Kopp Depo., Exh. 7). She, along with Edmund Hix, Jr., the lowest rated employee with

a rating of 2.70, were selected for termination (Gill Depo., p. 55, Exh. 3). Dennis

Homola, who was retained, ranked thirteen with a rating of 2.90 (Kopp Depo., Exh. 7).

Defendant's reason for retaining Mr. Homola was his expertise in the heavy equipment

operation area (Kopp Depo., p. 139, Exh. 7).

Ms. Ravenscraft was 48-years old. She was six years from retirement benefit

eligibility.

On February 18, 2003, Ms. Ravenscraft filed the instant action asserting claims

of age discrimination in violation of the ADEA and O.R.C. Chapter 4112, sex

discrimination in violation of Title VII and O.R.C. Chapter 4112, and wrongful discharge

in violation of Ohio public policy and ERISA discrimination in violation of 29 U.S.C.

§1140 (Doc. 1).

   3. Ms. Sprague

Ms. Sprague began working at the facility in 1981 and for Defendant when it

came on site in 1992 to begin clean-up work (Sprague Depo., pp. 15-16, Exh. 3).

During her tenure, Ms. Sprague held administrative positions within the security

organization (*Id.*, pp. 17, 27-29). Her job title was Supervisor Project Program Services

in the Administrative Manager MPC (*Id.*, p. 170, Exh. 25).

The April 2002 VSP was initiated for employees in Ms. Sprague's MPC (*Id.*, p. 168-71).  She opted not to participate (*Id.*).  Ms. Sprague was not selected for the April, 2002 ISP (*Id.*).

In June, 2002, Ms. Sprague applied for the open position of Security Supervisor, also known as Lieutenant (*Id.,* pp. 17, 215-217, Exh. 2).  Human Resources reviewed her application and determined she was not qualified for the position as she lacked experience supervising the union security guards, training and/or experience in security enforcement, law enforcement or the military (*Id.*, p. 45; Gill Aff. ¶150).  Ms. Sprague was not considered further for the position (Burr Depo., pp. 75-76; Gartrell Depo., pp. 49-50).

For the August 2002 VSP and ISP, the Administrative Manager MPC was re-named Project Services Manager MPC (hereinafter "Services MPC") (Gill Depo., pp. 304-305).  Defendant advised Ms. Sprague of this change (Sprague Depo., pp. 209-210).  Notwithstanding the fact the Services MPC was a declining MPC, and that she was at risk for being selected in the ISP, she did not participate in the VSP (*Id.*, pp. 214, 250-252).

Four employees comprised the Services MPC (*Id.,* Exh. 47).  Ms. Sprague recieved the lowest rating and was selected for the August 2002 ISP (*Id.*; Kopp Depo., p. 144).  She was 49-years old and six years from retirement benefit eligibility.

On August 21, 2002, Ms. Sprague left work on a medical leave of absence (*Id.,* p. 253).  Due to being on medical leave of absence, Ms. Sprague received her salary until the end of her medical leave in February, 2003 (*id.,* p. 273).

On February 18, 2003, Ms. Sprague filed the instant action asserting claims of age discrimination in violation of the ADEA and O.R.C. Chapter 4112, sex discrimination and retaliation in violation of Title VII, wrongful discharge in violation of Ohio public policy and ERISA discrimination in violation of 29 U.S.C. §1140 (Doc. 1).

## II.    ANALYSIS

### A.    *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(C).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

### B    *Sex Discrimination*

Plaintiffs assert claims for sex discrimination pursuant to Title VII, which makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's...sex...." 42 U.S.C. § 2000e-2(a)(1).

In a case alleging employment discrimination in violation of Title VII, a plaintiff can withstand a motion for summary judgment by presenting either direct evidence[4] of discrimination or circumstantial evidence from which a jury may infer a discriminatory motive.  *Rallins v. Ohio State University*, 191 F.Supp.2d 920, 928 (S.D. Ohio 2002), *citing Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348-49 (6th Cir. 1997).

A discrimination claim presented by circumstantial evidence is to be analyzed using the burden-shifting approach set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).  First, a plaintiff bears the burden of proving a *prima facie* case of discrimination by establishing:

1.   she is a member of a protected class;
2.   she suffered an adverse employment action;
3.   she was qualified for the position in question; and
4.   she was replaced by a person outside of the protected class.

*Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004), *citing Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582-583 (6th Cir. 1992).

However, when an employee is terminated pursuant to a reduction in force, the *McDonnell Douglas* framework is altered. *See Barnes v. GenCorp, Inc.* 896 F.2d 1457, 1465, n.1 (6th Cir. 1990).  Specifically, the fourth element is modified because the employer does not replace the employee. *Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 371 (6th Cir. 1999) As such, the plaintiff must present "additional direct,

---

[4]Currently, Plaintiffs do not present direct evidence of discrimination.

circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons." *Id.*, *quoting Barnes* at 1465. This "extra" evidence must be "sufficiently probative" to permit the fact finder to believe the defendant intentionally discriminated against the worker. *Barnes* at 1466.

Upon establishing a *prima facie* case, an inference of discrimination arises, and the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for its actions. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981).[5] If defendant provides a legitimate nondiscriminatory reason, the burden shifts back to plaintiff to demonstrate the offered reason is pretextual. *McDonnell Douglas* at 804-805. The plaintiff may prove pretext by showing either that:

1. the proffered reason had no basis in fact,
2. the proffered reason did not actually motivate the adverse action, or
3. the proffered reason was insufficient to motivate the adverse action.

*Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

The parties do not dispute Plaintiffs establish the first three elements of the *McDonald Douglas* test. Instead, at issue is whether Plaintiffs present "additional direct, circumstantial, or statistical evidence tending to indicate that Defendant singled them out for discharge due to their sex.

C. *Age Discrimination*

The ADEA provides: "It shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his

---

[5]It should be noted, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine* at 253. The *prima facie* case merely serves to raise a rebuttable presumption of discrimination by "eliminating the most common nondiscriminatory reasons for the [employer's treatment of plaintiff]," *Id.* at 254, and not to satisfy the plaintiff's ultimate burden of persuasion.

compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C.§ 623.  To prevail in an action under the ADEA, a plaintiff must show his age had a "determinative influence on the outcome" of the employment decision.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000), *quoting, Hazen* Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).

The *McDonald Douglas* burden shifting analysis set forth above also applies to Plaintiffs age discrimination case.  Again, the parties agree Plaintiffs establish the first three prongs of the *prima facie* case.  The issue is whether Plaintiffs fail to offer additional direct, circumstantial, or statistical evidence tending to indicate that Defendant singled them out for discharge due to their age.  This may include "showing that persons outside the protected class were retained in the same position."  *EEOC. V. Clay Printing Co.*, 955 F.2d 935, 941 (4th Cir. 1992)*, cited in Skalka v. Fernald Envtl. Restoration Mgmt. Corp.,* 178 F.3d 414, 421 (6th Cir. 1999).

D.     ERISA Discrimination

29 U.S.C. §1140 provides, "it shall be unlawful for any person to discharge...a participant or benficiary...for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...."  In applying the statute, "it is appropriate to employ a *Burdine,* burden-shifting approach if there is no direct evidence of the employer's motivation." *Humphrey v. Bellaire Corp.,* 966 F.2d 1037, 1043-44 (6th Cir. 1992) (citations omitted)*.*

To establish a *prima facie* case pursuant to §1140, a plaintiff must show (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled."  *Majewski v.*

*Automatic Data Processing, Inc.,* 274 F.3d 1106, 1113 (6th Cir. 2001) 1113-14, *quoting*

*Smith v. Ameritech,* 129 F.3d 857, 865 (6th Cir. 1997). The first element is satisfied by

the fact Plaintiffs were terminated.  The second element requires the presentation of a

causal connection between the termination and the reduction in pension benefits.

*Pennington v. Western Atlas, Inc.* 202 F.3d 902, 906 (6th Cir. 2000).  However, Plaintiffs

do not need to demonstrate Defendant's sole purpose in discharging them was to

interfere with benefits.  Instead, they must show it was a determining factor in the

decision.  *Id.*  Close temporal proximtiy has sometimes been permitted to make out a

*prima facie* case of ERISA discrimination.  *See e.g. Humphrey v. Bellaire Corp.,* 966

F.2d 1037, 1043-44 (6th Cir. 1992) (holding that plaintiff established a "bare minimum"

circumstantial *prima facie* case by showing his employer discharged him within two

months of his pension vesting date).  However, a gap of three years, absent "additional,

highly probative facts that suggest intential discrimination," is too great to be the basis of

a *prima facie* case.  *See Petru v. Lucent Technologies, Inc*., 102 Fed. Appx. 969, 971

(^th Cir. 2004) (gap of two years).

Ms. Cupp, Ms. Feiler, Ms. Ravenscraft and Ms. Sprague claim Defendant

terminated their employment in order to prevent them from becoming eligible for early

retirement benefits.  Plaintiffs contend they can establish their ERISA claim by direct

evidence.  Specifically, Plaintiffs point to a list entitled "Salaried & Wage Employees Age

52 With 7+ Years of Service" (hereinafter "List").  Plaintiffs contend the mere existence

of this list is evidence that Defendant considered retirement eligiblity status in making

the ISP decision.

Upon consideration, Plaintiffs argument fails as it is undermined by a number of salient facts. First, the List is dated March 26, 2002.  As such, it was created after the process for the April 2002 ISP began and was mostly concluded.  Additionally, it was completed almost five months before the August 2002 ISP.  More importantly, the List does not include any reference to retirement eligibility, instead setting forth ages and years of service.  Plaintiffs fail to identify any evidence relating to the List, its existence or its use.  Accordingly, the List does not constitute direct evidence of a specific intent of Defendant to violate ERISA by terminating Plaintiffs' employment.

Similarly, the List also fails as indirect evidence.  While the List contains the names of Ms. Cupp and Ms. Feiler, it also contains the names of individuals who were not selected for termination.  Of the 332 employees on the List, only 33 were terminated during the April and August 2002 ISPs (Gill Depo., Exh 2, 3).  This rebuts any inference of discriminatory animus which may be attributed to the List's existence. Furthermore, the List does not contain the names of Ms. Ravenscraft and Ms. Sprague.

As such, Plaintiffs are left only with the evidence of their remaining time to retirement eligibility.  Ms. Ravenscraft and Ms. Sprague, each six years from elibility, were not in close temporal proximity.  Therefore, as they have not identified additional, highly probative facts which suggest intentional discrimination, the Court concludes they fail to establish a *prima facie* case of benefits eligibility discrimination.

However, Ms. Cupp and Ms. Feiler, four months and less than 12 months, respectively, are in close temporal proximately.  As such, the Court concludes they establish a *prima facie* case.  As Defendant articulates a legitimate, non-discriminatory reason for the termination. Ms. Cupp and Ms. Feiler must prove Defendant's articulated

reason is pretextual.  As discussed below, the evidence upon which Ms. Cupp and Ms. Feiler rely fails to identify a basis for an inference that a prohibited factor may have contributed to their selection.

Accordingly, construing the evidence most strongly in favor of Ms. Cupp, Ms. Feiler, Ms. Ravenscraft and Ms. Sprague, the Court concludes Defendant is entitled to summary judgment with respect to their claims under ERISA.

    *E.    Individual Plaintiffs' Claims*

        1.    Ms. Cupp

As Ms. Cupp does not object to the dismissal of her federal sex discrimination claim, the Court will not discuss this claim and will dismiss it.

Ms. Cupp contends she establishes the fourth element with respect to her age discrimination claim as nine substantially younger employees were retained after the April 2002 ISP.  This assertion, standing alone, is insufficient to demonstrate a *prima facie* case of discrimination.

"[T]he fact that a younger...employee was retained while Plaintiff was terminated, taken alone, is simply insufficient to establish discriminatory motives."  *Brown v. EG&G Mound Applied Techs., Inc.*, 117 F. Supp. 2d 671, 678 (S.D.Ohio 2000).    Moreover, when employees older than a plaintiff are retained in a reduction in force, being the only employee of a certain age terminated is insufficient to establish the fourth element. *Lovas v. Huntington Nat'l Bank*, No. 99-3213, 2000 U.S. App. Lexis 11840 (6th Cir. May 22, 2000).  Additionally, when older employees are retained, a plaintiff in the protected class may still establish a *prima facie* case of discrimination by comparing himself to the younger employees who were retained.  However, instead, of merely pointing to the fact

younger employees were retained, he must present evidence of age-related bias in the selection process. *Skalka,* 178 F.3d at 422.[6]

Moreover, a careful review of all the facts further supports the Court's conclusion this evidence is insufficient to establish the fourth element of a *prima facie* age discrimination case. Ms. Cupp, relying on the nine substantially younger employees who were retained, ignores the retention of Mary Bynum, the oldest employee in the Cost Analyst X MPC, at 58-years of age. Further, she overlooks the age dynamics of the Cost Analyst Y MPC employees, who were rated by the same decision makers as the Cost Analyst X MPC. Three of the four terminated employees were younger than Ms. Cupp. Moreover, two of the retained employees were older than Ms. Cupp.

Ms. Cupp also contends additional evidence of discrimination is found in the following: (1) her ratings were inconsistent with higher ratings awarded to younger and/or male employees when the rater's comments were similar, (2) the ratings she received in the ISP were inconsistent with her previous performance evaluations, (3) Defendant's deviation from the procedure designed by Mercer, and (4) the fact less experienced employees in her MPC were retained.[7]

The first three arguments advanced by Ms. Cupp fail to establish a *prima facie* case of age discrimination. None of the evidence upon which she relies demonstrates

---

[6]The Court notes that the *Skalka* court also stated "it is hard to see how the jury could infer age discrimination when [the plaintiff] was younger than two of the four other people in the peer group." *Id.*

[7]Ms. Cupp asserts these arguments to demonstrate Defendant's legitimate business reason for terminating her was pretextual. Ms. Feiler, Ms. Gessendorf, Ms. Ravenscraft and Ms. Sprague assert the same arguments. However, as discussed above, the mere fact that younger and/or male employees were retained without looking at whether older and/or female employees were retained or whether younger or male employees were also terminated is insufficient. As such, the Court examines whether any of these arguments is sufficient evidence to establish a *prima facie* case of discrimination.

that the purpose was to discriminate against older employees.  Establishing a *prima facie* case of discrimination requires the plaintiff establish some nexus between the actions of the employer and the employee's age or sex.  The bald assertion that a nexus exists is insufficient.  *Moore v. Eli Lilly & Co.,* 990 F.2d 812, 819 (5th Cir. 1996), *cited in EEOC v. Texas Instrument, Inc.,* 100 F.3d 1173, 1182.  The record is simply devoid of a connection between Ms. Cupp's age and the rater's comments. Ms. Cupp's previous performance evaluations and any deviation from Mercer's procedures. Instead, this evidence simply suggests the process employed by Defendant was imperfect.  *See e.g., Cindea v. Jackson Twp.,* No. 97-3280, 1998 U.S. App. Lexis 2748 (6th Cir., Feb. 17, 1998) (evidence that a rating system was imperfect, without more, does not create an inference of nefarious motivation); *Cotton v. City of Alameda,* 812 F.2d 1245, 1249 (9th Cir. 1987) ("the ADEA does not make it unlawful for an employer to do a poor job of selecting employees.  It merely makes it unlawful to discriminate on the basis of age.").   Ms. Cupp merely illuminates flaws in Defendant's process when, instead, she must identify a basis for an inference that a prohibited factor may have contributed to her selection.  *See Skalka,* 178 F.3d at 422.

Similarly, Ms. Cupp's allegation that less experienced employees were retained fails to establish the fourth prong of a *prima facie* case.  Defendant's focus in the evaluations was on the skills needed for *future* work at the site to move toward closure. As such, the issue is not whether Ms. Cupp "in the abstract had better qualifications than the other candidates.  The question is whether the other candidates are more qualified with respect to the criteria that [Defendant] actually employs."  *Coleman v.*

*Quaker Oats Co.,* 232 F.3d 1271, 1285 (9th Cir. 2000), *quoting Cotton,* 812 F.2d at 1249.

Accordingly, construing the evidence in a light most favorable to Ms. Cupp, the Court concludes she fails to present additional circumstantial or statistical evidence which tends to indicate Defendant singled her out for discharge because of her age.

    2.  Ms. Feiler

First, Ms. Feiler maintains she was replaced by a substantially younger employee, Ellen McAnnich.  Upon review, the Court concludes the evidence does not establish Plaintiff was replaced by Ms McAnnich.  Ms. Feiler's supervisor, Brian Howard, testified that while Ms. McAnnich moved to the Maintenance Department after Ms. Feiler's termination, she performed duties for which Ms. Feiler was not responsible. due to the redistribution of work resulting from the ISP (Howard Depo., pp. 60-61).  As such, Ms. McAnnich was not assigned to perform Plaintiff's exclusive job duties. *Barnes v. GenCorp Inc.,* 86 F.2d 1452, 1465 (6th Cir. 1990) (citations omitted) ("A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.").  As such, the sole focus is whether Plaintiff's evidence is sufficient to support the modified fourth prong of the *McDonald Douglas* framework.

Ms. Feiler contends she establishes the fourth element of her sex and age discrimination claims by demonstrating of the employees retained, three were male and eight were substantially younger.  This narrow view ignores other relevant facts associated with the April 2002 ISP involving the Administrative subgroup of the Dept. Admin. MPC.  Out of the twelve employees in the Administrative subgroup of the Dept. Admin. MPC who were retained, eleven were female (Kopp Depo., Exh. 5; Gill Depo.,

Exh. 2). Additionally, five employees substantially younger than Ms. Feiler were terminated in April, 2002, whereas four employees older than she were retained (Gill Aff. ¶¶65, 66).

Ms. Feiler also contends additional evidence of discrimination is found in the following: (1) her ratings were inconsistent with higher ratings awarded to younger and/or male employees when the rater's comments were similar, (2) the ratings she received in the ISP were inconsistent with her previous performance evaluations, and (3) Defendant's deviation from the procedure designed by Mercer.

For the reason discussed above with respect to Ms. Cupp, Ms. Feiler's arguments similarly fail. None of the evidence upon which she relies demonstrates that the purpose was to discriminate against older or female employees. There is no evidence in the record connecting her age or sex to the rater's comments, her previous performance evaluations and the deviation from Mercer's procedures. Instead, this evidence simply suggests the process employed by Defendant was imperfect. Again, Ms. Feiler merely illuminates flaws in Defendant's process instead of identifying a basis for an inference that a prohibited factor may have contributed to her selection.

Accordingly, construing the evidence in a light most favorable to Ms. Feiler, the Court concludes she fails to present additional circumstantial or statistical evidence which tends to indicate Defendant singled her out for discharge because of her age or sex.

       3.     Ms. Gessendorf

Ms. Gessendorf contends she establishes the fourth element for her sex discrimination claim by demonstrating two of the retained employees were male. As

with Ms. Feiler, this narrow view also disregards other relevant facts associated with the August 2002 ISP involving the PSR MPC.   The other employee terminated with Ms. Gessendorf in the August 2002 ISP was male (Gill Depo., Exh. 3).   Moreover, of the employees retained in the PSR MPC, six were women (*Id.*).  Similarly, with respect to her age claim, Ms. Gessendorf neglects relevant facts.  The other PSR MPC employee terminated was 39-years old, and as such, was substantially younger than Ms. Gessendorf, and in fact, was not in the protected class (Gill Aff. ¶85).  Finally, two of the PSR MPC employees who were retained were older than Ms. Gessendorf (*Id.* ¶86).

Ms. Gessendorf also contends additional evidence of discrimination is found in the following: (1) her ratings were inconsistent with higher ratings awarded to younger and/or male employees when the rater's comments were similar, (2) the ratings she received in the ISP were inconsistent with her previous performance evaluations, (3) Defendant's deviation from the procedure designed by Mercer, and (4) the fact less experienced employees in her MPC were retained.

For the reasons previously stated, these arguments are insufficient to demonstrate a *prima face* case of either age or sex discrimination.  Accordingly, construing the evidence in a light most favorable to Ms. Gessendorf, the Court concludes she fails to present additional circumstantial or statistical evidence which tends to indicate Defendant singled her out for discharge because of her age or sex.

### 4.    Ms. Ravenscraft

Ms. Ravenscraft contends she establishes the fourth element of her sex and age discrimination claims by demonstrating eleven of the retained employees were substantially younger and male.  To begin with, the Court notes an improper assertion in

Ms. Ravenscraft's argument.  In her Memorandum in Opposition (Doc. 47), Ms. Ravenscraft lists in a chart the 11 substantially younger *and* male employees who were retained.  The use of "and" connotes each individual had both characteristics.  However, four of the employees were older than Ms. Ravernscraft.  Additionally, four other employees, ranging in age from 42 to 47, were not significantly younger than Ms. Ravenscraft.  An age difference of six years or less between a terminated employee and a retained employee is insignificant absent direct evidence that the employer considered age to be significant.  *Grosjean v. First Energy Corp.,* 349 F.3d 332, 340 (6th Cir. 2003).  Accordingly, these four employees are insignificantly younger than Ms. Ravenscraft. As such, only three of the 11 retained employees were significantly younger than Ms. Ravenscraft.

With respect to her sex claim, again, Ms. Ravenscraft neglects a relevant fact. The other MI MPC subgroup employee terminated in the August 2002 ISP was male (Gill Aff. ¶130).[8]

As do her fellow plaintiffs, Ms. Ravenscraft contends additional evidence of discrimination is found in the following: (1) her ratings were inconsistent with higher ratings awarded to younger and/or male employees when the rater's comments were similar, (2) the ratings she received in the ISP were inconsistent with her previous performance evaluations, (3) Defendant's deviation from the procedure designed by Mercer, and (4) the fact less experienced employees in her MPC were retained.  The analysis set forth above with respect to Ms. Gessendorf applies equally to the evidence

---

[8]An Interesting side note is the fact that in the April 2002 ISP, in which Ms. Ravenscraft was retained, eight women were retained and all five who were terminated were male.

upon which Ms. Ravenscraft relies.  Accordingly, this evidence, on its face without some

nexus, is insufficient to demonstrate a *prima facie* case of age or sex discrimination.

Accordingly, construing the evidence in a light most favorable to Ms.

Ravenscraft, the Court concludes she fails to present additional circumstantial or

statistical evidence which tends to indicate Defendant singled her out for discharge

because of her age or sex.

        5.    Ms. Sprague

Ms. Sprague contends she establishes the fourth element for her age

discrimination claim by demonstrating two of the retained employees were significantly

younger.  However, this contention is not accurate.  In her Memorandum in Opposition

(Doc. 49), Ms. Sprague lists in a chart two substantially younger employees who were

retained.  They were 40 and 44-years old.  As discussed above, an age difference of six

years or less between a terminated employee and a retained employee is insignificant

absent direct evidence that the employer considered age to be significant.  *See*

*Grosjean v. First Energy Corp.,* 349 F.3d 332, 340 (6th Cir. 2003).  Accordingly, one of

the retained employees was the same age as Ms. Sprague.    Additionally, since Ms.

Sprague does not address this issue, the Court notes the two retained employees were

female.

Moreover, with respect to her sex discrimination claim, Ms. Sprague maintains

Defendant's rejection of her application for the Security Supervisor position, and

subsequent hiring of a male, is additional circumstantial evidence of sex discrimination.

However, the Human Resources Department determined Ms. Sprague was not qualified

for the position.  There is no evidence that any individual involved in the August 2002

ISP process involving Ms. Sprague was involved in the determination that she was not qualified for the Security Supervisor position.  As such, there is no connection between the two events.  As such, as argued by Defendant, any evidence that Ms. Sprague was found unqualified for the Security Supervisor position is irrelevant to whether her selection for the August 2002 ISP was due to sex discrimination.

Ms. Sprague also contends additional evidence of discrimination is found in the following: (1) her ratings were inconsistent with higher ratings awarded to younger employees, (2) the ratings she received in the ISP were inconsistent with her previous performance evaluations, and (3) Defendant's deviation from the procedure designed by Mercer.  The analysis set forth above is relevant to the evidence upon which Ms. Sprague relies.  Accordingly, this evidence, on its face without some nexus, is insufficient to demonstrate a *prima facie* case of age or sex discrimination.

Accordingly, construing the evidence in a light most favorable to Ms. Sprague, the Court concludes she fails to present additional circumstantial or statistical evidence which tends to indicate Defendant singled her out for discharge because of her age or sex.

     *F.    Ohio Public Policy*

Plaintiffs' public policy claims for age and sex discrimination necessarily fail as they are unable to establish a statutory claim.  *Hausler v. General Electric Co.,* 2005 U.S. App. Lexis 10983 (6th Cir. June 9, 2005).

C.    **CONCLUSION**

Reviewing the evidence in a light most favorable to Plaintiffs results in the

conclusion summary judgment is appropriate.  The record does not support the finding

that sufficient evidence exists for a jury to reasonably find that any of the Plaintiffs were

victims of discrimination by Defendant based upon age or sex. Accordingly, The June

16, 2005 Motion of Defendant for Summary Judgment as to the Claims of Paula A.

Cupp (Doc. 36) is hereby **GRANTED**; the June 16, 2005 Motion of Defendant for

Summary Judgment as to the Claims of Terry R. Feiler (Doc. 37) is hereby **GRANTED**;

the June 16, 2005 Motion of Defendant (hereinafter "Defendant") for Summary

Judgment as to the Claims of Kathleen C. Gessendorf (Doc. 38) is hereby **GRANTED**;

the June 16, 2005 Motion of Defendant for Summary Judgment as to the Claims of

Peggy J. Ravenscraft (Doc. 39) is hereby **GRANTED**; the June 16, 2005 Motion of

Defendant for Summary Judgment as to the Claims of Elizabeth A. Sprague (Doc. 40) is

hereby **GRANTED**; the December 16, 2005 Motion of Defendant to Strike the Jury

Demand of Plaintiffs (Doc. 61) is hereby deemed **MOOT**.  This matter is hereby

dismissed and removed from the docket of this Court.

        **IT IS SO ORDERED.**


                    /s/ Michael H. Watson
                    Michael H. Watson, Judge
                    United States District Court